FréEMAN, J.,
delivered the opinion of the Court.
The only matter before us, in this case, arises on a bill filed by Quinby & Co., in the nature of a cross bill, to set up a title to the land in controversy, claiming to have purchased the same at tax sales, or to be the as-signee of others, who had purchased.
This bill alleges that defendant, Talmadge, had filed his bill in the Chancery Court at Sparta, in April, 1857, for a debt of $1,444.48, with interest and costs, adjudged in his favor by the Supreme Court for the County and City of New York, and had obtained an attachment upon said bill, which had been levied on 38,961 acres of land, being the land in controversy in. this case ; that, in February, 1857, defendant, Stephenson, had filed his attachment bill for the recovery of an indebtedness due him, of $2,665.26, and had obtained an attachment, which had been levied on this land. These bills were filed against the North American Coal and Transportation Company.
On the first of June, 1857, defendant, Newman, also filed his bill in the same Court, seeking to enforce a mortgage on these lands, and claiming priority over the attaching creditors.
These cases were ultimately prosecuted to decrees in the Chancery Court, from which decrees appeals were taken to the Supreme Court, where a decree was pronounced, reversing the Chancellor’s decree as to the priority of these claimants, and remanding the cases to the *598 Chancery Court, to be proceeded in under that decree; decreeing, however, that the land be sold.
Before the sale was effected, owing to delay arising out of the war, in March, 1866, complainant, Quinby & Co., obtained leave to file this bill against the complainants and the defendant in the first three bills mentioned, in which Quinby & Co. claim to have purchased the lands during the pendency of the litigation, at tax sales, and to have had an assignment from certain parties, who had purchased at another tax sale, of his certificate of pur.chase; that the records of the Circuit Courts of the counties of "White and Cumberland, containing the proceedings under which said lands were condemned and ordered to be sold have been wholly lost or destroyed during the war, and no copies of the same, or returns of the officer, can be had or produced.
This bill alleges that the land was regularly ordered to be sold for taxes, and that, under said order, the complainants, Quinby & Co., purchased, and that they have, by such purchase, an equitable title to the land; and prays that the parties to the three bills be enjoined from selling the land under their decree, and that all the claim and title of the Transportation Company in and to said land be divested out of them and vested in “these complainants,” that is, Quinby & Co., together with the legal title supposed to be in Newman.
The bill, however, in its statement of facts with reference to the title, shows that the lands were listed in the name of one Assure Assure, who had sold the land a number of years before to one of the Newmans, and *599 that the land was listed in the county of "White, for a railroad tax that had been voted in that county before the organization of the county of Cumberland, and in the county of Cumberland for the State and county taxes for the years for the taxes of which it was sold. It appears further, that the county of Cumberland was formed out of a portion of the territory of the county of White, and organized after the tax in favor of the railroad had been voted by the county of White.
' This is a bill in the nature of an ejectment bill, based, it is true, on an equitable title, but still a proceeding in which the complainants, Quinby & Co., must show the better right in themselves before they can recover, or, rather, that they are entitled, as against these defendants, to call for the legal title, and have the same decreed to them, free from the charge of the decrees in favor of the defendants, to which we have referred.
The answer of the defendants, except Newman, deny all the material allegations of the bill. As to him, Newman, the bill is taken for confessed.
The first question presented for our consideration, is, has the complainant shown that these lands were ever ordered to be sold, by competent aud legal evidence of the fact? If he fails in this, then the title which he claims must fail at the commencement.
As to the sale of the land in White County, we have only a receipt of C. R. Gamble, Railroad Tax Collector, in which he states that he had “received of William Bos-son, William Clayton and Jo. Brown, one hundred and twenty-one dollars, the full amount of all railroad tax and uosts on eleven tracts of land, containing twenty-three *600 thousand, six hundred and forty acres, tying in 13th district, sold as the property of Assure. Assure, for said taxes, and this day purchased at my sale by said Bosson, Clayton and Brown. July 5, 1858.” This receipt is transferred, in consideration of $141, to S. H. Colins, for J. M. Quinby, and the Tax Collector authorized to make a deed to him, August 12, 1858.
This receipt can be of no service to complainants, Quinby & Co., ■ in making out a title to them, as it is not given to them, and is transferred to J. M. Quinby, not to James M. Quinby & Co.,[1] and we can not know that they are the same parties.
In the next place, it utterly fails to identify the land in controversy as the land sold by the said Gamble, by any sufficient description, giving only the number of acres, and stating it to be “in 13th district, and sold :,as' the property of Assure Assure.” This is clearly insufficient to furnish any muniment of title, on which the complainants can have a decree for the land described in the bill.
The deposition of Joseph Brown is taken, in order to prove the loss or destruction of the records of the Circuit Court of White County, and contents of the records, and that these lands were ordered to be sold. He simply proves that he was the Clerk of the Circuit Court of White County in 1858, and that Charles B. Gamble wás the Railroad Tax Collector for the year 1857. He is then asked to state “if the lands of Assure Assure were sold for railroad tax for the year 1857, condemned, and an order of sale issued, and the lands advertised.” He says, *601 in reply to the above question: “My recollection is, the lands were condemned. From the evidence I find in the office, I think an order of sale issued, and the lands advertised.” This is all tbe proof of the contents of tbe records of White County, and this shows that there is something to be found in the office, from which the witness has drawn his conclusion as to the facts stated. Whatever appears in the office, at least, should have been presented. We need take no time to discuss the sufficiency of this proof. It complies with no rule of law on the subject, and utterly fails to prove the contents of the records of said court.
We may here dismiss the case, so far as the claim, of complainants depend on the purchase in White County, without investigating the question made before us in the argument, as to whether the land, should have been listed for the railroad tax in White County, after the organization. of Cumberland County.
We now examine the case, as to the sale made in Cumberland County for State and County taxes. It appears from the records of the Circuit Court of Cumberland County, that W. J. Reynolds, the Tax Collector for that county, reported to court the following lands as having been listed for taxes for the year 1858, and the taxes remain unpaid, etc. Then follows the description of the land:
“'In District No. 2 — Assure Assure, 23,660 acres.; valued at $6,000; taxes, $26.40.
“W. R. REYNOLDS, Tax Collector.”
Then follows a judgment of the Court, that the several tracts of land so reported ■ for the non-payment of the *602 taxes thereon, etc., be ordered to be sold, or so mucb thereof as shall be sufficient to satisfy the taxes and charges, etc., for the taxes due for the years 1856 and 1857.
The Clerk of the Court certifies that the above is a true and perfect transcript of the record, and of the proceedings had for the sale of the Assure Assure lands for taxes for the years 1856 and 1857, and that the above is all the record that can be found in his office in relation to said condemnation and sale. He then certifies: “ I have made diligent search for the order of sale in my office, and said search has been ineffectual; said order of sale can not be found in niy office. The above is a true and- perfect record of all tbat can be found in my office, in relation to said proceedings, as appears of record or on file.”
This, and the receipt of W. E. Eeynolds, who was Tax Collector of Cumberland County, showing that' he “received fifty-six dollars and fifty cents, in full for the taxes on the lands of Assure Assure, lying in Cumberland County, &c., for the year 1857; all of .said lands being bought by S. H. Colms, at a sale of lands for taxes, at Crossville, 5th of July, 1858, at whicli time the said Quinby & Co., by their agent, was the highest bidder,” is all the evidence of title presented by complain-' ants to the lands in controversy. Can we decree a title to complainants on this state of the case?
The Act of 1844, c. 92, s. 1, Nicholson’s Statutes, enacts, that, -in all cases of sales of land heretofore made for public taxes, under the provisions of the laws now in force, it shall be sufficient, to make such sale valid and *603 communicate good title to tbe purchaser, that the land so sold lies in the county in which it has been reported for non-payment of the taxes thereon; that it has been duly reported; that an order of. sale has been awarded, and that the sale of said land was duly advertised; to establish which facts, the Sheriff’s deed, reciting their existence, shall be prima facie, and all judgments and orders of sale shall be conclusive, unless the person wishing to shovr the irregularity of the same can prove that the taxes were duly paid before such judgment or order of sale was rendered.
Under this Act, it was held, in Tharp v. Hart, 2 Sneed, 569, that the plaintiff in ejectment, when the defendant set up a tax title, would not be permitted to show any irregularity in the sale or proceedings, unless he showed that he had first paid the taxes for the year for •which the sale was made. In this case, however, the party seeking to set up the tax title had a deed from the Sheriff, under the order of sale. If - we concede that this was the correct construction of this section, it can not aid complainants in this case, as they do not pretend to have any deed at all.
In the case of Thacker, Trustee, &c., ex parte, 3 Sneed, 346, the Court hold that the requirements of the third section of the Act of 1844, “that it shall be the duty of the Sheriff, in his report to court, besides stating that the .land lies in the county, to state the civil district or districts in which said land lies, to whom granted, or in whose name entered, the quantity of acres as near as may be, which shall be a sufficient description; and no sale shall *604 be avoided on account of any objection or informalities merely technical, but such sales shall be good and valid, if the foregoing requisites be substantially complied with, and the description contained in the Sheriff’s report shall be given in the advertisement,” should be complied with; and that, to “give validity to the proceedings, it is essential that its requirements should be conformed to.” This was an appeal from the refusal of a Circuit Judge to condemn land, and order it to be sold for taxes.
In case of Henderson et als. v. Starrett et als., 4 Sneed, 470, the Court held that the advertisement of the land for sale for taxes might be looked to, and attacked for not complying with the requirements of the statute, and go on to say, that the subsequent proceedings, after the judgment and order of sale, are not protected by the strict requirements of the last clause of the first section of the Act of 1844. The party in that case had the deed of the Tax Collector, and its recitals were held to be prima facie evidence’ of the facts recited, as to advertisement and sale, but no more.
"We need review no more of our cases to see that the complainants present no valid, equitable title before us, on which they can ask a decree in their favor. They have no deed from the Tax Collector, or his successor in office, to make out a prima facie case in their favor of the regularity of the proceedings under which they claim, and of title in themselves. Not having this, he must then show that, up to the time of his purchase, all the requirements of the Act have been complied with; that is, that the and sold lies ^ in the county in which it has been re *605 ported for non-payment of taxes; that it has been duly reported; that an order of sale bas been awarded, and that said land was duly advertised.
The third section defines what shall constitute a due report of the land; that is, that it lies in the county; shall state the civil district in which it lies; to whom granted, or in whose name entered, and the quantity of acres, as near as may be.
No advertisement of this land is shown in this record. The report of the Tax Collector does not show the county in which the land lies, to whom granted, or in whose name entered.
For these defects in the title of complainants, we hold the tax sales under which they claim were absolutely void, and communicated no title, either legal or equitable.
It appears, however, in this case, that complainants paid taxes on said lands, not only for the years 1856 and 1857, but for a number of other years, subsequent; and as they have discharged a charge upon the land fixed by law, they are entitled to be reimbursed the sums so paid.
The decree of the Chancellor will be reversed; the injunction granted will be dissolved; the land will be sold by the Clerk of this Court, for payment of debts, in the order fixed by previous decree of the Supreme Court; and the Clerk will be directed to take an account of the payments made of taxes, and report the same to the present term of this Court, which will be allowed complainants, with six per cent, interest on the amount from the time paid, and said sum shall be allowed first out of the proceeds *606 of the sale. The cross bill will be dismissed at complainant’s cost in this Court, and in the Court below; the balance of the costs will be paid out of the fund arising from the sale.

 See Morean v. Saffarans, 3 Sneed, 595.